IN THE UNITED STATES ADISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOHN C. WHITFIELD, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 06 C 4105 |
| v. ) | |
| ) | Magistrate Judge Maria Valdez |
| MICHAEL J. ASTRUE,[1] ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| ) | |

## MEMORANDUM OPINION AND ORDER

This is an action brought under 42 U.S.C. § 405(g) to review the final decision of the Commissioner of Social Security ("Commissioner") denying plaintiff John Whitfield's claim for Disability Insurance Benefits ("DIB"). The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons explained below, the Court denies the plaintiff's motion for summary judgment [Doc. No. 21], grants the Commissioner's motion for summary judgment [Doc. No. 23], and affirms the ALJ's decision.

## PROCEDURAL HISTORY

On November 27, 2001, Whitfield applied for Title II DIB, alleging disability with an onset date of August 20, 2001 due to injury to his left shoulder and hip, and right-hand swelling. (R. 16.) On February 20, 2002, the Social Security Administration ("SSA") denied his application. (R. 34-37.) Whitfield then filed a request for reconsideration, which the SSA

---
[1] Michael J. Astrue is substituted for his predecessor pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

denied on August 15, 2002 on the grounds that the medical evidence indicated that Whitfield's condition caused some restrictions but still allowed him to do "medium" work. (R. 42.) Finally, Whitfield filed a request for a hearing by an administrative law judge ("ALJ"), which was granted; the hearing took place on December 17, 2004. The ALJ continued the hearing to August 23, 2005, so that Whitfield could receive a medical examination, including x-rays of his left shoulder and back. (R. 275-78.) On October 28, 2005, the ALJ ruled that Whitfield was not disabled under the Social Security Act because he retained the residual functional capacity to perform his past relevant work as a professional musician. (R. 18.) Whitfield subsequently filed a request for a review of the ALJ's decision, but the SSA Appeals Council denied his request. (R. 4-6.) Thus, the ALJ's decision became the final decision of the Commissioner and is now reviewable by the District Court under 42 U.S.C. § 405(g).

## FACTUAL BACKGROUND

### A. *Whitfield's Testimony*

Whitfield, who was sixty-two years old at the time of the hearing, was born on October 24, 1942. (R. 288.) He graduated high school but did not go to college. (R. 288.) He has been a freelance professional bass violinist since he was nineteen. (R. 288, 290.) He used to play regularly in the house band at the Drury Lane Theater and supplemented his income with other side gigs and royalties from recordings. (R. 291, 299.) At some point, Whitfield stopped receiving royalties because he had not recorded in a long time, and the last time he was able to work regularly was in 2002. (R. 291-98.) He used to receive a pension from the musician's union, but they cut him off because he did not file income taxes. (R. 295.) For two years prior to the hearing, he worked occasionally one day per week in a band at a French restaurant,

2

earning $90 per day. (R. 292, 294.) He had lived in an apartment for the previous fifteen years but recently had to move in with his mother because he could no longer pay for it. (R. 289.)

Whitfield claimed he had recurring pain and swelling in his right hand that usually lasted two to three days, but at the time of the hearing, he said it had been swollen for about a week. (R. 302.) Because he was not able to drive to work anymore because of the swelling in his hand, Whitfield's brother drove him to work. (R. 299.) Whitfield also had trouble signing his name and doing household chores because he could not close his right hand all the way due to the swelling. (R. 296-97, 300.) The swelling in his right hand affected his work, in that he was not able to use a bow or play as loud. (R. 300, 303.) He was still able to get through his set at the French restaurant because he only needed to use one finger on his right hand to pluck his bass violin. (R. 300.) On a scale between one and ten, Whitfield ranked the pain in his right hand when it is swollen at five. Whitfield tried to medicate his swollen hand with Aleve, but it was ineffective. (R. 304.)

In addition to the swelling in his right hand, Whitfield had continuing problems with his left shoulder. (R. 311.) He felt pain in his left shoulder when he played his bass violin, which is why he was not able to work as often as he used to. (R. 311.) He was also no longer able to play the bass guitar because the strap on it that goes across his shoulder causes him pain. (R. 311.) He was able to raise his left arm a little bit to lift items off a shelf, but it was painful if he reached too high. (R. 317.)

Whitfield also had pain in his back when he woke up or when he had to stand for too long. (R. 312-13.) He was able to stand for about thirty minutes, but he had to rest for about ten minutes before he could stand again. (R. 318-19.) He was able to walk about a block before he

needed to stop because he felt shaky. (R. 315-16.) However, he had no problem sitting for more than an hour. (R. 315-16.)

Whitfield was able to lift his amplifier, which weighs about twenty pounds, but only with his left hand. (R. 313-14.) He was also able to lift his bass violin and case with his left hand, which together also weighs about twenty pounds. (R. 314.) He was not able to lift more than five pounds with his right hand when it was swollen. (R. 315.) His job at the French restaurant lasted three and a half hours, and he played one hour sets with half-hour breaks. (R. 293.) He was able to perform the job by using a stool to sit on when he played because he could not stand for an entire set. (R. 303.)

## B. *Medical Evidence*

On November 3, 2000, Whitfield was examined by his treating physician, Dr. Corouthers, for injuries he sustained during a car accident the previous month. (R. 168-69.) His injuries included a laceration on his right hand and swelling of his wrist and forearm. (R. 168.) The swelling continued for about two weeks. (R. 169.) On November 7, 2000, Dr. Corouthers diagnosed Whitfield with a traumatic laceration on his right hand. (R. 167.) Whitfield visited Dr. Corouthers again on August 21, 2001, after sustaining injuries during a carjacking. (R. 165.) Dr. Corouthers diagnosed him with a sprain in the left shoulder due to the carjacking. (R. 165.)

On January 22, 2002, Dr. Kumar gave Whitfield a consultative physical examination. (R. 159-61, 171-73.) Dr. Kumar recorded that Whitfield complained of pain in his left shoulder and back. (R. 159.) Whitfield said that he was unable to play the bass guitar due to the injury to his left shoulder. (R. 159.) Dr. Kumar diagnosed him with arthritis in the left shoulder and back based on Whitfield's mention of pain and symptoms. (R. 173.) Dr. Kumar noted that Whitfield's left shoulder joints were restricted in movement while adducting and while raising

4

his hand up ninety degrees. (R. 173.) Dr. Kumar concluded that Whitfield could lift fifty pounds and walk with fifty pounds without a problem but stated that his ability to play music had been affected by the pain in his left shoulder. (R. 173.)

On February 11, 2002, Whitfield's medical records were reviewed by a state agency physician, who completed a Physical Residual Functional Capacity Assessment ("RFC"). (R. 174-81.) According to the RFC, Whitfield could occasionally lift fifty pounds, frequently lift twenty-five pounds, could stand for six hours in an eight-hour day, and that he had unlimited ability to push and/or pull. (R. 175.) The RFC further stated that Whitfield had limited ability to reach in all directions with his left arm but had unlimited ability to reach with his right arm. (R. 177.)

On January 20, 2005, Whitfield underwent another consultative physical examination by Dr. Smith. (R. 182.) Dr. Smith recorded that Whitfield complained of pain his left shoulder and lumbar spine and had difficulty lifting his musical instrument and elevating his left shoulder. (R. 182.) Whitfield could occasionally lift twenty-five pounds, frequently lift twenty pounds, could stand or walk for six hours in an eight-hour day, and that he was not limited in his ability to sit. (R. 185-86.) Dr. Smith also concluded that Whitfield could occasionally climb, balance, kneel, crouch, crawl, and stoop, and could constantly handle, finger, and feel, and could frequently reach or pull. (R. 186.)

C.  *Vocational Expert Testimony*

The vocational expert ("VE") characterized Whitfield's past work as that of a skilled, trained, professional musician. (R. 322.) The work generally requires a light level of exertion. (*Id.*) The ALJ judge posed two hypotheticals to the VE. (R. 324-26.) The first involved a person with the same work history, age, and education as Whitfield, who would be limited to

5

work that would require occasionally lifting and carrying twenty-five pounds, frequently lifting and carrying twenty pounds, with sitting, standing, and walking being possible for up to six hours of an eight-hour day with customary breaks. (R. 324.) While the person would have limitations in using his left arm, he could frequently use it for reaching and working above shoulder level, grasping, handling, turning, and picking. (R. 324.) Additionally, the person would have occasional limitations in climbing stairs, ramps, ladders, ropes, or scaffolding, as well as in balancing, kneeling, crouching, crawling, and stooping. (R. 324.) The VE responded that such a person would not be prevented from continuing the past relevant work of a musician. (R. 325.)

The ALJ judge's second hypothetical involved a person who used some medication, could lift at most five pounds with his right hand, had recurring swelling and pain in his right hand that lasted three to four days during the week. (R. 325-26.) The swelling in the right hand prevented the person from fingering, picking, and fine manipulations of the hand. (R. 326.) Additionally, the person could stand for at most thirty minutes before he had to sit down. (*Id.*) The VE responded that such a person would not be able to perform the past relevant work as a musician because that would require good use of both hands, which the person in the hypothetical does not have. (R. 326-27.) The VE also pointed out that Whitfield has no transferable skills that would allow him to make a living as a teacher, composer, or arranger of music. (*Id.*)

### D. *ALJ Decision*

The ALJ held that Whitfield was not disabled under the Social Security Act because he retained the ability to perform the requirements of his past relevant work. (R. 17.) First, Whitfield was classified by the ALJ as an individual with a high school education whose past

6

work experience includes employment as a musician. (R. 16.) The ALJ noted that Whitfield met the non-disability requirements set forth in Section 216(i) of the Social Security Act and was insured for disability benefits through the date of the ALJ's decision. (*Id.*) The ALJ then ruled that Whitfield's current employment as a bass violin player at a restaurant for three and a half hours per week, earning $90 per week, was not substantial gainful activity, but it did demonstrate a capacity for work. (*Id.*) The ALJ further found that Whitfield's contusion and strain on his left shoulder with residual arthritis, status post traumatic laceration on his right palm, degenerative disc disease, obesity, and hypertension qualified as severe impairments as set forth in Step 2 of the five-step disability analysis. (R. 17.) However, the impairments were not severe enough to meet any of the impairments listed in Appendix 1, Subpart P, Regulations No. 4, and thus the ALJ did not find a *per se* impairment at Step 3 of the analysis. (*Id.*)

The ALJ determined that although Whitfield was generally credible, he could not credit Whitfield's testimony where he complained of severe problems affecting the functioning of his right hand because there was a lack of medical evidence to support it. (*Id.*) The ALJ stated that the only medical evidence to support a complaint regarding the right hand was in a report by Whitfield's treating physician, Dr. Corouthers, who noted that on November 7, 2000, Whitfield complained of a 2.5 cm cut on his right palm resulting from a motor vehicle accident about one month earlier. (*Id.*) Instead of seeking medical attention for the cut, Whitfield treated it at home. (*Id.*) He testified that he had pain and swelling in his right hand at a pain level of five, on a scale from one to ten. (*Id.*) The ALJ noted that the pain usually lasted two to three days, but sometimes five days. While his hand was swollen, Whitfield could not lift anything with the right hand. (*Id.*) However, the ALJ pointed out that there was no evidence that Whitfield complained of pain or swelling in his right hand during physical examinations by Dr. Kumar or

Dr. Smith. (*Id.*) Furthermore, there was no medical note confirming a problem with his right hand in their treating notes. (*Id.*)

The ALJ did find evidence to support Whitfield's claim of impaired function in his left arm and shoulder. (*Id.*) However, he noted that this impairment did not prevent Whitfield from performing as a professional bass violinist based on his admitted part-time work.

In assessing whether Whitfield was able to perform the requirements of his past relevant work, the ALJ considered the extent to which his impairments could reasonably be accepted as consistent with the objective medical evidence or other evidence. (R. 18.) Based on the medical evidence from Dr. Smith, the ALJ found that Whitfield was able to lift or carry twenty-five pounds occasionally and twenty pounds frequently, sit, stand, and walk at least six hours in an eight-hour day, frequently reach and pull with the left upper extremity in all directions and occasionally climb, balance, kneel, crouch and stoop, and constantly handle, finger, and feel. (*Id.*) After posing this description of RFC to the vocational expert, she concluded that a person matching this description and Whitfield's vocational profile could perform his past relevant work as a professional musician, which she characterized as light, skilled work. (*Id.*) The ALJ agreed with this conclusion and consequently found that the claimant was not under a disability as defined in the Social Security Act at any time through the date of the decision. (*Id.*)

## DISCUSSION

### A. *The ALJ's Legal Standard*

Under the Social Security Act, a person is disabled if he or she has an "inability to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to

last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a). In order to determine whether a claimant is disabled, the ALJ follows a five-step analysis outlined by 20 C.F.R. § 416.920(a)-(f) and considers the following questions in order: (1) Is the claimant presently unemployed? (2) Is the claimant's impairment severe? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the claimant unable to perform her former occupation? (5) Is the claimant unable to perform any other work? An affirmative answer at either Step 3 or Step 5 qualifies the claimant as disabled. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992). A negative answer at any step, other than at Step 3, precludes a finding of disability. *Id.* The claimant bears the burden of proof at Steps 1-4. *Id.* Once the claimant shows an inability to perform past work, the burden shifts to the Commissioner to prove the claimant's ability to perform other work existing in significant numbers in the national economy. *Id.*

### B. *Judicial Review*

Judicial review of the ALJ's decision is limited to determining whether the ALJ's findings are supported by substantial evidence or based upon legal error. *Stevenson v. Chater*, 105 F.3d 1151, 1153 (7th Cir. 1997). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). This Court may not substitute its judgment for that of the Commissioner by reevaluating facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998).

## C. *Analysis*

### 1. **The ALJ's Disregard of Evidence in the Record**

The ALJ ruled that because the medical evidence in the record did not support Whitfield's testimony regarding pain in his hand, he could not credit that allegation. (R. 17.) Whitfield argues on appeal that the ALJ erred in discrediting his testimony based on a lack of medical evidence by failing to take into account numerous and consistent references in the record regarding pain and swelling in his right hand.

Whitfield first argues that the ALJ failed to take into account the Disability Report of November 27, 2001, the February 11, 2002 RFC evaluation, and the Agency Notification letter of February 20, 2002, each of which contained language stating that Whitfield alleges right hand swelling. He also states that these records run contrary to the ALJ's finding that the only complaint of right hand pain and swelling in the record was in Dr. Corouthers' notes from November 7, 2000.

Contrary to Whitfield's assertion, the ALJ did not find that the only complaint of right hand pain and swelling in the record was in Dr. Corouthers' notes from November 7, 2000. The ALJ actually found that the only complaint of right hand pain and swelling in the *medical* record was in Dr. Corouthers' notes from November 7, 2000. (*Id.*) None of the reports from medical examinations after that date indicate that Whitfield had continued pain and swelling in his right hand. The additional evidence that Whitfield alleges the ALJ improperly ignored is not objective medical evidence. The Disability Report contains Whitfield's own allegation of right hand pain as a basis for disability, (R. 131), and the Agency Notification letter refers to his right hand pain as one of the bases for his disability application, (R. 37, 181). Whitfield points out that the RFC mentioned right hand swelling based on the "current examination," which presumably referred to

10

Dr. Kumar's examination on January 22, 2002, less than a month before the RFC was completed. However, because Dr. Kumar's report does not actually mention anything about right hand pain or swelling, (R. 171-73), the RFC's citation to the "current examination" was either incorrect or did not in fact refer to Dr. Kumar's report. Furthermore, the RFC itself is not objective medical evidence but rather is an assessment based upon objective medical evidence. A medical advisor's assessment of what other doctors find should be given little weight in determining disability, and is "hardly a basis for competent evaluation." *Lovejoy v. Schweker*, No. 80 C 5295, 1983 U.S. Dist. LEXIS 16349, at *28 (N.D. Ill. June 9, 1983). Therefore, Whitfield has not offered any evidence in the record contradicting the ALJ's conclusion regarding Whitfield's report of right hand pain.

### 2. **Whitfield's Credibility**

Whitfield also asserts the ALJ erred in ignoring his testimony regarding pain and swelling in his right hand. Pain and other subjective complaints may be sufficient, in certain circumstances, to support a finding of disability even if the complaints are not supported by objective medical evidence. *Carradine v. Barnhart*, 360 F.3d 751, 753 (7th Cir. 2004). The ALJ "will not reject the statements of the individual . . . solely because the available objective medical evidence does not substantiate these statements." *Pope v. Shalala*, 998 F.2d 473, 482 (7th Cir. 1993), *overruled on other grounds by Johnson v. Apfel*, 189 F.3d 561 (7th Cir. 1999). When evaluating subjective complaints of pain, an ALJ must follow a two-step process: (1) the ALJ must first establish whether the individual's complaints of pain are supported by objective medical evidence; and (2) once such objective medical evidence is established, the ALJ must consider both the subjective and objective evidence in evaluating how the pain may affect the individual's capacity for work. *Id.*

11

In the present case, the ALJ did not clearly err in finding that Whitfield's testimony regarding pain and swelling in his right hand was not supported by objective medical evidence. The only objective medical evidence supporting this testimony is Dr. Corouthers' notes from November 7, 2000. (R. 17.) Whitfield made no complaints of pain or swelling in his right hand to any of the examining doctors that he visited after that date. (*Id.*) In addition, Whitfield testified that the last time he was able to work regularly as a musician was in 2002. (R. 298.) This testimony shows that Whitfield was able to work as a musician after both his complaint of right hand pain and swelling in November 2000 and his alleged onset date of disability on August 20, 2001. Due to the lack of objective medical evidence to support Whitfield's testimony of pain and swelling in his right hand, the Court will not disturb the ALJ's credibility determination.

## CONCLUSION

For the reasons expressed above, the plaintiff's motion for summary judgment [Doc. No. 21] is denied, and the Commissioner's motion for summary judgment [Doc. No. 23] is granted.

SO ORDERED.

DATE: AUG 2 1 2007

ENTERED:

*Maria Valdez*

HON. MARIA VALDEZ
United States Magistrate Judge